Joseph F. Hawkins, J.
The plaintiff, a religious body, seeks a judgment declaring a restrictive covenant ‘ ‘ null and void. ’ ’ On January 24, 1969, plaintiff acquired title to the property in issue, which is subject to restrictive covenants. The restrictive covenants are recited in the deed and the one at issue provides: “ The premises shall be used for residential and farm purposes only.”
On May 1, 1969, a measure of construction work was started by plaintiff; however, it was subsequently suspended and has not been resumed. There is testimony that the cost and value of the improvements made to date are approximately $3,000.
The plaintiff contends, inter alia, that the restrictive covenant is vague and ambiguous and, hence, unenforceable; further, that the plaintiff’s grantor, who is a common grantor of several other parcels, although he had previously conveyed title to the plaintiff, amended the restrictive covenant as it affects the subject parcel by executing and recording, some 11 months after divestiture of title, an instrument entitled 1 ‘ Amended Declaration of Restrictions.” It was sought, thereby, to enlarge the permitted uses so as to conform to the permissible uses under the zoning classification now governing the subject property.
Previously, Mr. Justice Dempsey, deemed a motion by plaintiff a motion for declaratory relief and the defendants’ cross motion as applications for summary judgment. Respecting so much of the said opinion which might be deemed to have ‘1 set the law of the case ”, Justice Dempsey declined to rule in that stage of the litigation upon the efficacy of the said amended declaration of restrictions. He, nevertheless, did expressly hold that the reservations by the original grantor (Grill) by virtue of the reservation respecting ‘ ‘ other lots ’ ’ did not authorize the modification as to the subject parcel. Mr. Justice Dempsey also rejected the contention that there were oral waivers by the defendants. He largely left to resolution by this court the question of whether or not there exists such common scheme or plan as to make it unconscionable to adhere to the restrictive covenant in question.
*55 Plaintiff urges that since ‘1 A church or house of worship is generally known as ‘ The House of Grod ’ ’ ’, it, therefore, follows, “ the residence of the Supreme Being, where his followers come to worship him” is “accepted throughout the Christian [sic] world ’ The argument, in our opinion, is not ‘ ‘ theological ’ ’ as characterized by the defendants, but rather tautological. The defendants’ rejoinder, we believe, merits quotation: “It might be retorted that Grod dwells in the hearts of all men and requires no house to hold Him.”
We find that the restrictive covenant is not ambiguous. To seek to enlarge upon its unmistakable language limiting the use to “residential and farm purposes only ” so as to include a church is to ignore clear language. However laudable and necessary may be the plaintiff’s purposes, we do not believe they warrant or justify denying defendants their legal rights. Whether such uses are to be limited to residential and farm, or to residential or farm, is of little solace to plaintiff for the intended use comes within neither category; hence, whether the language is alternative or conjunctive is of little moment.
Had the deed in question contained the usual shorthand recitals usually present in conveyances, i.e., “being subject to covenants, easements of record, if any, etc.”, perhaps there could be some arguments sounding in equitable estoppel that plaintiff despite the recording acts, although having proceded in ignorance, nevertheless, did so in good faith. At bar, the covenants are expressly and clearly recited in the deed. Any doubt as to their restrictive intent is resolved by the next following paragraph containing the restriction, to wit: ‘ ‘ That the foundation line of any dwelling erected upon said lot, exclusive of porches, shall be 50 feet from the front line of said lot. Any house built thereon shall be at least 10 feet from side lines and shall have not less than 600 square feet on the first floor.” This provision, of course, relates to a dwelling house.
Additionally, any lingering doubt as to plaintiff’s scienter is dissolved by the letter from the attorney then representing two of the defendants, dated May 13, 1969, addressed to the plaintiff, advising and cautioning that although it had obtained a building permit, its “ attention ” was being called to “ the fact that the deed to your property may he used for residential and farm purposes only. This applies to religious organizations as well as individual owners.” The letter then concluded by advising plaintiff that the adjoining property owners were considering legal action.
*56 It thus follows from the date of the said letter that the plaintiff was placed on notice that its right to construct the church was being questioned; and this was done shortly after construction had been commenced. It, therefore, follows that the plaintiff decided to take the calculated .risk of ignoring defendants’ contentions. The damages it has sustained, consequently, must be deemed to be self-inflicted, if the defendants prevail.
Upon the trial, there was testimony to the effect that at the closing when the grantee raised questions about the limiting effect of the restrictive covenants, it was told that they could be ignored as inapplicable. Thus, apart from the express language in the deed, there were both notice and knowledge, antedating appreciably the letter from defendants ’ counsel that there were real questions as to whether the plaintiff could build a church on the property.
The matter at bar comes squarely within Evangelical Lutheran Church v. Sahlem (254 N. Y. 161) wherein a church similarly sought a declaration that a restrictive covenant barring a church edifice was unenforceable. That covenant restricted the use, inter alia, to “private residential purposes.” Judge Caedozo, noted that the defendant opposed the erection of the church although a parishioner of the very congregation which sought to erect the church. Nevertheless, he then held that the defendant (p. 168): “the owner, has done nothing but insist upon adherence to a covenant which is now as valid and binding as at the hour of its making. His neighbors are willing to modify the restriction and forego a portion of their rights. He refused .to go with them. Rightly or wrongly he believes that the comfort of his dwelling will be imperilled by the change, and so he chooses to abide by the covenant as framed. The choice is for him only. ’ ’
The language immediately following the above paragraph contains the celebrated reference to a “ more sensitive adherence ”, and disposes of the instant issue in the sonorous terms of which only Judge Caedozo was capable (p. 168).: “Neither at law nor in equity is it written that a license has been granted to religious corporations, by reason of the high purpose of their being, to set covenants at naught. Indeed, if in such matters there can be degrees of obligation, one would suppose that a more sensitive adherence to the demands of plighted faith might be expected of them than would be looked for of the world at large. Other owners may consent. One owner, the defendant, satisfied with the existing state of things, refused to disturb it. He will be protected in his refusal by all the power of the law. ’ ’
*57 The remaining contention of the plaintiff that the defendants are here estopped since they granted oral consent is, firstly, belied by the very testimony of these defendants that they had, on the contrary, refused to execute any waiver and, secondly, if, indeed, there had been such oral agreement, it has no legal efficacy at law under the Statute of Frauds.
The plaintiff’s furtheu contention that other property in the immediate vicinity, under the zoning law and absent such restrictive covenants, could be used to build cathedrals or synagogues, is irrelevant. There is nothing to bar the plaintiff church from acquiring such property and building its church thereon. It is particularly untenable since the same prohibitions which are being applied to the plaintiff would similarly be imposed upon other religious bodies seeking .to build a church on this particular property. The inference of discriminatory enforcement is rejected.
It should be further noted that the two defendants, Lindsay and the Niets are not interlopers. They are owners of adjacent lands and, hence, the plaintiff religious body comes wholly within the strictures of Evangelical Lutheran Church (supra).
The real plaint of plaintiffs appears that were it not for a title company requiring a written release upon plaintiff seeking a building loan, it would not be in its present unfortunate position for, as it states, if “ plaintiff had had the necessary funds, its Kingdom Hall would be erected and operating now. ’ ’ This, indeed, is a rather extraordinary argument to be advanced to persuade a court to exercise its equitable conscience in its favor.
The complaint, accordingly, is dismissed, with costs.